IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TYLANE LORENZO LANDY** | * | |
| **Plaintiff,** | | |
| v. | * | **CIVIL ACTION NO. PWG-14-501** |
| **OFFICER ISENBERG** | * | |
| **OFFICER PICKLE** | | |
| **OFFICER BECKER** | * | |
| **LIEUTENANT CRAIG**[1] | | |
| **Defendants.** | * | |
| | ***** | |

## MEMORANDUM

Plaintiff Tylane Lorenzo Landy ("Landy"), a former prisoner at the Charles County Detention Center ("CCDC"), filed a self-represented 42 U.S.C. § 1983 civil rights complaint for $25,000.00 in damages against defendants. He alleges that at approximately 7:40 p.m. on the night of December 14, 2013, he was placed on a suicide watch at the CCDC and was handcuffed to a metal bench for two days.[2] ECF No. 4. He complains that the handcuffs were too tight, causing swelling and redness to his left wrist, for which he was denied medical treatment. Landy additionally claims that he has continued "sharp" pains on the inside of his left wrist and he "lost feeling in [his] thumb and index finger" because of the tightness of the handcuffs. *Id.*

Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment, which Landy has opposed, and to which Defendants have filed a reply. ECF Nos. 16, 18 & 19.

---

[1] The Clerk shall modify the name of this defendant, which appears on the docket as Lieutenant Criag," to "Lieutenant Craig."

[2] In his original complaint, Landy named the Charles County Detention Center (CCDC") as the defendant. ECF No. 1. CCDC was dismissed as a defendant and Landy was given additional time to supplement his complaint. ECF No. 3. His supplemental complaint names CCDC Officers Isenberg, Pickle, Becker and Craig as defendants for their alleged actions (or inactions) while Landy

Defendants' motion, treated as one for summary judgment, shall be granted without oral hearing. *See* Local Rule 105.6 (D. Md. 2014).

### I.  Standard of Review

Because matters outside the pleadings will be considered, Defendants' motion shall be treated as a motion for summary judgment. Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

### II.  Discussion

#### Facts

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party, *see Scott v. Harris*, 550 U.S. 372, 378 (2007); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and liberally construes Landy's pleadings in light of the fact that he is self-represented, *see*

---

was assigned to a "suicide watch." ECF No. 4.

*Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir. 1978). In his unverified complaint, Landy claims that he was subject to excessive force and denied medical treatment while detained at CCDC.

On May 3, 2013, Landy was charged with robbery, first-degree assault and use of a firearm in the commission of a crime of violence and detained at the CCDC. Inmate File 2–3, ECF No. 16-3. On May 15, 2013, Landy, who was housed alone in a cell, was found to be in possession of thirty-one baggies of suspected cocaine. *Id.* at 10–12. He was charged with possession of a controlled dangerous substance with the intent to distribute, possession of contraband in a place of confinement, and related charges. *Id.*

On Saturday, December 14, 2013, at approximately 7:40 p.m., Landy, who was housed in the D-M Section of CCDC, began to act erratically, including making statements of suicidal intent. *Id.* at 22 (Roberson Incident Report).[3] Specifically, officers in the D-Block Section heard "high-pitched screams" and Officer Michael Roberson ordered Control to close Cell 3 in the D-M Section. *Id.* As Officer Roberson approached the Section's dayroom door, he saw Landy "throwing items" in his cell. *Id.* He ordered Control to open the dayroom door, and he and Officer Isenberg entered the dayroom. *Id.* Officer Roberson approached Landy and heard him screaming that "he wanted to kill himself with a sheet tied around his neck and shoving his head into the toilet." *Id.* Landy was ordered out of his cell and to lie on the floor, but ignored the directives. Rather, he hurled himself out of the cell, sprawled on the floor and continued to scream. He was ordered to lay face down on the floor. Landy did not comply. He jumped up and rammed into the fire door between the D-L and D-M Sections, screaming wildly the entire time that he wanted to kill himself. *Id.* Roberson

---

[3] Officer Roberson's Incident Report, Inmate File 22–23, is corroborated by the Incident Reports of Officers Gregory (*id.* at 24), Pickle (*id.* at 25), Becker (*id.* at 26), Norris (*id.* at 27), and Isenberg (*id.* at 28–29). Officers Isenberg, Pickle, Becker, and Craig also submitted corroborating affidavits. ECF

approached Landy with his handcuffs out and again ordered him to lie on his stomach. *Id.* at 22–23. Landy, however, pushed himself from the floor and moved directly towards Officers Roberson and Isenberg. *Id.* Both officers used their bodies to effect a takedown of Landy, called for assistance over the radio, and ordered a lockdown. *Id.* at 23. Officer Pickle was able to apply handcuffs to Landy's wrists and to double-lock them. *Id.* at 25. He checked them for tightness and found that they were not too tight. *Id.*

Landy continued to yell that he wanted to kill himself. *Id.* at 23. Roberson took control of Landy's feet, as he was kicking wildly the entire time. *Id.* Officer Becker arrived and grabbed Landy's legs and feet. *Id.* at 26. Landy was placed in an Emergency Restraint Belt by Officers Isenberg, Pickle and Horrell and his legs were shackled by Officer Samuel Norris, who double-locked the shackles and checked them for tightness. *Id.* at 24, 27. Landy was carried out of the Unit by Officers Gregory, Norris, Isenberg and Pickle and was taken to the CCDC Behavioral Adjustment Unit ("BAU"), where he was secured to a metal bench. *Id.* at 24–28. He was immediately examined by Medic Fatu Turay. *Id.* at 23.

Landy was placed on a suicide watch, to be observed every 15 minutes. Inmate File 15. "Landy was secured to the bench in the B.A.U. because [CCDC] has only one suicide cell which is located in the Medical Unit," and is only available to the first inmate placed on suicide watch. Craig Aff. ¶ 3. A prisoner secured on the bench will remain so assigned until the cell in the Medical Unit is available. *Id.* The mental health staff is responsible for deciding when a prisoner on suicide watch

---

Nos. 16-5 – 16-8.

is released from such an assignment. *Id.* Landy remained on the bench until he was cleared from suicide watch by mental health staff because the suicide cell number became available. *Id.* ¶ 4.[4]

On December 15, 2013, at 12:01 a.m., three officers entered the BAU and removed Landy from the bench. Inmate File 29 (Martin Incident Report). He was taken to the bathroom, where he relieved himself, and was then escorted to the shower area where a strip search was performed. *Id.* Landy was then placed in a Suicide Wrap and taken back to the BAU bench at which time he was re-secured to the bench, and was provided with a mattress and blanket. *Id.*

While performing a count in the BAU on December 15, 2013, Officer Matthew Irby was informed by Landy that he had injuries from his attempt to harm himself and his resistance to officers who restrained him the previous night. Inmate File 30 (Irby Incident Report). Irby contacted medical staff and escorted Medic Fatu to the BAU bench. *Id.* Fatu observed minor bruising on both of Landy's wrists, but no swelling. *Id.* She found this to be consistent with the area of handcuffing. *Id.* Further examination showed a scrape on his right knee, which had not completely scabbed over. The injuries were photographed by Irby. ECF No. 16-7. Fatu indicated that as there was nothing serious, she would perform any wound care at a later time on her shift. Landy remained secured to the BAU bench on suicide watch and was moved from the bench when a Medical Cell I became available. Inmate File 30.

On December 16, 2013, Landy was seen by Mental Health staff. As a result of the interview, Landy's observation level was reduced from 15 minutes to 30 minutes. Inmate File 16. Landy remained on the suicide bench for approximately 41 hours, beginning with the underlying event until he was cleared from suicide watch on Monday, December 16, 2013, at approximately 12:43

---

[4] Landy was observed by closed circuit television monitoring, so that he could be remotely viewed by

p.m.[5] Craig Aff. ¶ 4. He was again interviewed by Mental Health staff on December 17, 2013, and found to no longer present a threat to himself or others. Inmate File 35. On December 17, 2013, Landy was moved out of the BAU to attend his adjustment hearing accompanied by a team of six officers. *Id.* Once he entered the hallway area he was examined by a prison nurse and made no complaints. *Id.* He was strip searched, and placed in Cell 4. *Id.* He was seen by Dr. Brian Sim on December 18, 2013. ECF No. 16-10.

In his opposition, Landy states that he was placed on a suicide watch for two days during which time he was handcuffed to a metal bench. He states that he experienced pain and swelling to his wrist and the loss of feeling in his thumb and finger. Pl.'s Opp'n 2.

## Legal Analysis

Defendants argue that Landy has failed to demonstrate that they applied excessive force or denied him medical treatment. As interpreted under the Constitution, pretrial detainees such as Landy cannot be punished at all, much less "maliciously and sadistically." *Graham v. Connor*, 490 U.S. 386, 395 n.10, 398 n.11 (1989); *see Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977). To prevail on his claim, Landy must establish that the force applied by Defendants was objectively unreasonable in order to demonstrate that it was excessive in violation of the Fourteenth Amendment's Due Process Clause. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). To prevail on an excessive force claim under the Fourteenth Amendment, a plaintiff must prove "'that Defendants inflicted unnecessary and wanton pain and suffering' upon the detainee." *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) (quoting *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir.1998)

---

officers. Inmate File 37; Craig Aff. ¶ 5.

[5] Defendant Craig affirms that mental health care staff do not work on weekends. Thus, they were unavailable on December 14 and 15, 2013. Craig Aff. ¶ 4.

(*both abrogated on other grounds as stated in Sawyer v. Asbury*, 537 F. App'x 283, 290 (4th Cir. 2013))). "The proper inquiry is whether the force applied was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Taylor*, 155 F.3d at 483). A plaintiff is no longer required to demonstrate that his injuries are not *de minimis*. *Wilkins v. Gaddy*, 559 U.S. 34, 38-39 (2010). When determining whether an officer's actions violated due process, a court must consider "the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008), *abrogated on other grounds as stated in Sawyer*, 537 F. App'x at 290.

A detainee's medical claim also arises under the Fourteenth Amendment's Due Process Clause. There is no practical difference, however, between the due process standard and the Eighth Amendment protection standard, both of which consider whether the plaintiff established "deliberate indifference" on the part of the defendants to his "serious medical needs." *See Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988). To establish a claim of this nature, Landy must satisfy two requirements. First, he must satisfy the "objective component" by illustrating a serious medical need.[6] *See Hudson v. McMillian*, 503 U.S. 1, 5, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167

---

[6] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006) (*citing Hill v. Dekalb Reg. Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994)); *see also Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *Creech v. Nguyen*, 153 F.3d 719, 1998 WL 486354, at *5 (4th Cir. 1998).

(4th Cir. 1998). If he has proven this first element, Landy must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of correctional and medical staff. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837.

The evidence presented to the Court show that the degree and nature of force employed by Defendants was reasonable given their response to a prisoner who was attempting to harm himself and who repeatedly threatened to take his own life. Further, Landy was remotely observed by officers and repeatedly assessed and examined by medical staff while in the BAU. Any injuries he experienced - minor bruising to the wrists and a scrape to his knee - were consistent with minimum force applied to secure and restrain him while he was on a suicide watch. The medical records also show that Landy was repeatedly seen by health care staff while in BAU and all results were within normal limits. The contemporaneous findings of minor bruising and a knee scrape were not objectively serious conditions.

## III. CONCLUSION

Defendants' motion to dismiss or for summary judgment, construed as a motion for summary judgment, shall be granted.[7] Judgment shall be entered in favor of Defendants and against Landy. A separate Order shall be entered reflecting the rulings entered in this decision.

Date: 09092015

Paul W. Grimm
United States District Judge

---

[7] In light of my finding regarding Landy's Fourteenth Amendment claims of excessive force and the denial of medical care, I need not examine Defendants' qualified immunity argument.

9